Date signed March 30, 2011



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Bryan Matthew Davis, | : | Case No.: 09-26768-WIL |
| Carla Denise Bracey-Davis, | : | Chapter 13 |
| | : | |
| Debtors. | : | |
| ——————————————— | : | |
| | : | |
| Bryan Matthew Davis, | : | |
| Carla Denise Bracey-Davis, | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| TD Bank, N.A., | : | |
| | : | |
| Respondent. | : | |

### MEMORANDUM OF DECISION IN SUPPORT OF ORDERS GRANTING AMENDED MOTION TO AVOID LIEN AND CONFIRMING PLAN

Before the Court is the Debtors' Amended Motion to Avoid Lien (the "Motion"), which

seeks to avoid the third-priority lien held by TD Bank, N.A. ("TD Bank") against the Debtors'

principal residence located at 9726 Natalie Drive, Upper Marlboro, MD 20772. TD Bank filed

an Opposition to the Motion and both parties filed supplemental briefs. Also before the Court is

confirmation of the Debtors' proposed Amended Chapter 13 Plan (the "Amended Plan") and the objections thereto filed by the Chapter 13 Trustee and TD Bank.  The Court has considered all of the pleadings filed by the parties, the oral arguments made by counsel and Mrs. Bracey-Davis' testimony.  The Court has also analyzed the decisions rendered by other courts since the enactment of BAPCPA[1] regarding the propriety of lien stripping in a Chapter 13 case where a debtor is ineligible to receive a discharge.  For the reasons set forth herein, the Motion is granted and the Amended Plan is confirmed.

## I.   **Undisputed Facts**

The Debtors, Bryan Davis and Carla Bracey-Davis, filed their Chapter 13 petition on September 4, 2009 (the "Petition Date").  The Debtors previously filed a petition under Chapter 7 of the Bankruptcy Code on June 7, 2008, and received a Chapter 7 discharge on September 17, 2008.  Accordingly, the Debtors are ineligible to receive a discharge in this case pursuant to 11 U.S.C. § 1328(f)(1).[2]  The Debtors' Schedule A lists their principal residence as 9726 Natalie Drive, Upper Marlboro, MD 20772 (the "Property").  The fair market value of the Property is $270,000.00, established as of December 17, 2009, pursuant to an appraisal obtained by the Debtors and not disputed by TD Bank.  The Property is encumbered by three liens as reflected in the Debtors' Schedule D.  TD Bank has conceded that the balance owed on the first-priority lien held by Wells Fargo Bank, N.A. is $275,373.59 and the balance owed on the second-priority lien held by Bank of America, N.A. is $115,138.58.  TD Bank recorded a third-priority lien against the Property pursuant to an Indemnity Commercial Deed of Trust for Residential Property

---

[1]  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was enacted on April 20, 2005.  The relevant provision of BAPCPA became effective on October 17, 2005.

[2]  Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

executed by the Debtors on August 22, 2007.  Pursuant to the proof of claim filed by TD Bank,

the outstanding balance owed on its loan is $117,603.31.  TD Bank has stipulated that the

balances owed on the first and second-priority liens exceed the fair market value of the Property

and renders TD Bank's lien wholly unsecured.

## II.    Questions Presented

The Motion seeks to avoid TD Bank's wholly unsecured junior lien pursuant to 11 U.S.C.

§ 506.  TD Bank raised the following issues in opposition to the Motion and/or in its objection to

confirmation of the Amended Plan:

> (i) Whether the Debtors' ineligibility to receive a discharge pursuant to
> 11 U.S.C. § 1328(f)(1)[3] precludes them from stripping off TD Bank's
> lien *per se*; and

> (ii) If there is no *per se* prohibition, was the Amended Plan proposed in
> good faith and was the Debtors' case filed in good faith pursuant to 11
> U.S.C. §§ 1325(a)(3) and (7)[4] where the Debtors are attempting to strip off
> a lien that could not be stripped off in their prior Chapter 7 case?[5]

---

[3]  Section 1328(f) provides:
> Notwithstanding subsections (a) and (b), the court shall not grant a discharge of
> all debts provided for in the plan or disallowed under section 502, if the debtor
> has received a discharge–
>> (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year
>> period preceding the date of the order for relief under this chapter, or
>> (2) in a case filed under chapter 13 of this title during the 2-year period
>> preceding the date of such order.

[4]  Section 1325 provides, in relevant part:
> (a) Except as provided in subsection (b), the court shall confirm a plan if–
>> (3) the plan has been proposed in good faith and not by any means forbidden by law; [and]
>> (7) the action of the debtor in filing the petition was in good faith….

[5]  TD Bank also questioned whether the Debtors are required to commence an adversary proceeding to
avoid its lien. After a hearing on this matter held on April 6, 2010, TD Bank filed a Line withdrawing this
procedural objection to the Motion.

The Chapter 13 Trustee has also objected to confirmation of the Amended Plan. In his objection, the Trustee argues that Section 1325(a)(5)[6] requires entry of a discharge to strip off a lien. Lastly, the Debtors have challenged TD Bank's standing to object to confirmation because the Debtors' *in personam* liability to TD Bank was discharged in their prior bankruptcy case.

The Court will summarily dispense with the standing issue before addressing the other issues presented. This Court finds that TD Bank has standing to challenge confirmation because it has a claim against property of the estate. Section 102(2) establishes, as a "rule of construction," that the phrase "claim against the debtor," as used in Section 506(d), includes a claim against property of the debtor. 11 U.S.C. § 102(2); *see also Johnson v. Home State Bank*, 501 U.S. 78, 85 (1991). "A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." *Id.* Moreover, the Motion caused TD Bank to be a party to these proceedings.

## III.    Procedural Posture

The Court held combined hearings on the Motion and confirmation of the Amended Plan on January 26, 2010 and April 6, 2010. At the January 26, 2010 hearing, TD Bank and the

---

[6] Section 1325(a)(5) provides, in relevant part:
   (a) Except as provided in subsection (b), the court shall confirm a plan if–
     (5) with respect to each allowed secured claim provided for by the plan--
       (A) the holder of such claim has accepted the plan;
       (B)(i) the plan provides that--
          (I) the holder of such claim retain the lien securing such claim until the earlier of--
            (aa) the payment of the underlying debt determined under nonbankruptcy law; or
            (bb) discharge under section 1328; and
         (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law….

11 U.S.C. § 1325(a)(5).

Debtors proceeded on the issue of the Debtors' good faith in filing their Chapter 13 case and proposed plan.  The sole witness to testify in support of confirmation was Carla Bracey-Davis, one of the Debtors in this case.  Although the Motion was set for hearing for January 26, 2010, TD Bank filed a Memorandum of Law in support of its opposition to the Motion and to confirmation on January 25, 2010— one day before the hearing.  Because the Debtors were not given sufficient time to review TD Bank's Memorandum of Law prior to the hearing, the Court continued the matter to April 6, 2010 for final argument.  The Court also permitted the parties to file additional briefs on the legal issues raised in TD Bank's Memorandum regarding the Debtors' ability to strip off its lien.

On April 2, 2010, four days before the continued hearing, the Chapter 13 Trustee filed a supplemental objection to confirmation addressing the lien avoidance issue.  Although the Trustee filed an initial objection to confirmation prior to the January 26, 2010 hearing, his initial objection dealt with the Debtors' failure to provide him with proper documentation, failure to file amended schedules, and failure to dedicate all of their disposable income to their plan.  The Trustee's supplemental objection raised, for the first time, whether Section 1325(a)(5) bars a debtor from confirming a plan that strips off a wholly unsecured lien where the debtor has received a discharge in a prior bankruptcy case within the proscribed period set forth in Section 1328(f).  Although TD Bank had previously argued that the Debtors' ability to strip off its lien was contingent upon the entry of a discharge order, TD Bank did not rely on Section 1325(a)(5).

IV.    **Discussion**

   **A.  Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K) and (L).

**B.  Is there a *per se* rule against lien stripping in a "Chapter 20" case where the debtor is not entitled to receive a discharge?**

A so-called "Chapter 20" case involves a debtor who files a Chapter 7 case, receives a discharge, and thereafter files a Chapter 13 case.  The Bankruptcy Code permits this type of serial filing as "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief."  *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991); *see also Branigan v. Bateman (In re Bateman)*, 515 F.3d 272 (4th Cir. 2008)(holding that notwithstanding a debtor's inability to obtain a Chapter 13 discharge, a debtor is nonetheless eligible to file a Chapter 13 case).  A debtor may not, however, receive a Chapter 13 discharge in a bankruptcy case filed within four years of filing an earlier Chapter 7 petition that resulted in a discharge.  *See* 11 U.S.C. §1328(f)(1).

Although Chapter 20 cases are permitted, TD Bank and the Trustee encourage this Court to adopt a *per se* rule making lien stripping in a Chapter 20 case contingent upon the entry of a Chapter 13 discharge.  A general review of lien stripping is instructive.  "In a 'strip off' the entire lien is removed, whereas in a 'strip down' a lien is bifurcated into secured and unsecured claims with only the unsecured claim component being removed.'" *Johnson v. Asset Management Group, LLC*, 226 B.R. 364, 365 n.3 (D. Md. 1998)(*citing In re Lam*, 211 B.R. 36, 37 n. 2 (B.A.P. 9th Cir. 1997)).  It is well established that a debtor is precluded from lien stripping in Chapter 7 cases.  *See Dewsnup v. Timm*, 502 U.S. 410 (1992) (holding that Section 506(d) does not permit the strip down of a partially secured lien); *see also Ryan v. Homecomings Financial Network*,

6

253 F.3d 778, 781-83 (4th Cir. 2001) (holding that an allowed, wholly unsecured consensual junior lien may not be stripped off in a Chapter 7 case). However, there is no prohibition against lien stripping in Chapter 13 cases. Rather, in Chapter 13 cases, a debtor's ability to strip off an unsecured junior mortgage lien is governed by two Bankruptcy Code provisions; namely, Sections 506 and 1322(b). Section 506(a) provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Section 506(d) provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--
>
> > (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
> >
> > (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d). 11 U.S.C. § 1322(b)(2) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
> > (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). Despite the anti-modification provision of Section 1322(b)(2), courts in this District permit Chapter 13 debtors to strip off a wholly unsecured junior mortgage lien

against their principal residence. *See Johnson v. Asset Management Group, LLC*, 226 B.R. 364. This issue was revisited recently in *First Mariner Bank v. Johnson*, 411 B.R. 221 (D. Md. 2009), *aff'd*, 2011 WL 52358 (4th Cir. Jan. 06, 2011). In a decision that was affirmed by the United States Court of Appeals for the Fourth Circuit, the United States District Court for the District of Maryland confirmed that the United States Supreme Court's holding in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), did not prohibit the strip off of a wholly unsecured junior lien on a debtor's principal residence in a Chapter 13 case. *Id.*[7] The District Court explained that the proper starting point in the Chapter 13 lien-stripping analysis is with a valuation under Section 506(a) rather than with the anti-modification provision in Section 1322(b)(2).[8] *First Mariner Bank v. Johnson*, 411 B.R. at 224 (*citing Bartee v. Tara Colony Homeowners Ass'n*, 212 F.3d 277, 290 (5th Cir. 2000); *Tanner v. FirstPlus Fin., Inc.*, 217 F.3d 1357, 1360 (11th Cir. 2000) ("the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence")). In other words, a creditor must demonstrate that it has an allowed secured claim under Section 506(a) before it can invoke the anti-modification

---

[7] *Nobelman* prohibited the bifurcation of a single undersecured lien on a principal residence into secured and unsecured components (or a strip down of the unsecured component).

[8] The conclusion reached in *Johnson v. Asset Management* and *First Mariner Bank v. Johnson* is consistent with the decisions rendered by the six Courts of Appeals and two Bankruptcy Appellate Panels that have directly considered the issue. *See Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin., Inc.*, 205 F.3d 606 (3d Cir. 2000); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831 (B.A.P. 1st Cir. 2000); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (B.A.P. 9th Cir. 1997).

provision of Section 1322(b)(2).  *See id.*  Of key importance to this analysis is that Section 506 is not contingent on a debtor's eligibility to receive a chapter 13 discharge.

In this case, as of the Petition Date, TD Bank had in *in rem claim* against the Debtors' bankruptcy estate in the form of a lien against the Debtors' real property.  TD Bank's *in rem* claim has been valued at $0.00 because there is no value in the Debtors' real property to which it could attach in light of the existing liens with higher priority.  Accordingly, TD Bank's *in rem* claim is wholly unsecured in the Debtors' Chapter 13 case pursuant to Section 506(a) and can be avoided pursuant to Section 506(d).[9]  *See First Mariner Bank v. Johnson*, 411 B.R. at 223-24. This determination is consistent with the plain language of Section 506(a), and with the procedures established by this Court, which require debtors to complete the lien valuation/ stripping process prior to confirmation.[10]

The Court acknowledges but declines to follow the weight of authority that favors TD Bank's argument that lien stripping pursuant to Section 506 is contingent on a debtor's eligibility to receive a Chapter 13 discharge.  *See Prairie v. Picht (In re Picht)*, 428 B.R. 885 (B.A.P. 10th Cir. 2010); *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010); *In re Jarvis*, 390 B.R. 600 (Bankr.

---

[9]  A Section 506(a) valuation must occur prior to confirmation, but the subject lien will not be avoided pursuant to Section 506(d) until plan completion.  Local Bankruptcy Rule 3012-1 for the United States Bankruptcy Court for the District of Maryland, as Amended by Administrative Order No. 10-02, provides in subsection (e), that the proposed order granting the avoidance of a lien on the debtor's principal residence under 11 U.S.C. § 506 shall conform to Local Bankruptcy Form H and "[i]f granted, avoidance of the lien shall occur at such time as debtor completes performance of debtor's confirmed Chapter 13 plan and receives a discharge under 11 U.S.C. § 1328(a)."  The Court notes that pursuant to Local Bankruptcy Rule 9009-1, Local Bankruptcy Forms can be altered as may be appropriate.

[10]  When a Chapter 13 petition is filed, the Clerk issues a "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" (the "Official Form 9I").  In this District, the Official Form 9I sets forth the date and time of the meeting of creditors and other deadlines, including a deadline to file motions to value collateral, motions to avoid liens, and all other motions that may impact a debtor's plan. In the instant case, the deadline for filing motions to value collateral and motions to avoid liens was October 15, 2009, the same date as the meeting of creditors.  *See* Docket No. 6.  The Debtors timely filed the Motion.

C.D. Ill. 2008); *In re Mendoza*, 2010 WL 736834 (Bankr. D. Colo. Jan. 21, 2010); *In re Blosser*, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009). This Court finds these cases distinguishable, as detailed below, and agrees with the current minority of decisions holding that the Bankruptcy Code does not condition a Chapter 13 debtor's right to strip off a wholly unsecured junior lien on the debtor's eligibility for a discharge. *See*, *e.g.*, *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010); *In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010) (holding that a debtor's right to strip off a wholly unsecured lien is conditioned on the debtor's obtaining confirmation of, and performing under, a Chapter 13 plan that meets all of the statutory requirements rather than on a debtor's discharge); *In re Casey*, 428 B.R. 519 (Bankr. S.D. Cal. 2010).

The case of *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272 (4th Cir. 2008), binding precedent on this Court, gives some guidance on why a debtor might need Chapter 13 protection notwithstanding the debtor's inability to obtain a discharge. In *Bateman*, the Fourth Circuit opined, "a Chapter 13 debtor ineligible for a discharge may 'file a Chapter 13 case and utilize the tools in chapter 13 to cure a mortgage, deal with other secured debts, or simply pay debts under a plan with the protection of the automatic stay.'" *Bateman*, 515 F.3d at 283 (*citing* 8 *Collier* P 1328.06[2]). The *Bateman* Court recognized that in many Chapter 13 cases, "it is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.'" *Id.* Other courts have found that Chapter 13 debtors who are ineligible for discharge under Section 1328(f) may still "enjoy all of the rights of a chapter 13 debtor, including the right to strip off liens." *In re Tran*, 431 B.R. at 237. Those courts have held that lien stripping in a Chapter 20 case is to be dealt with at confirmation. *Id.* This Court agrees.

10

TD Bank asks this Court to follow the ruling in *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008). In *Jarvis*, the United States Bankruptcy Court for Central District of Illinois, followed Illinois precedent in holding that when a Chapter 13 debtor is ineligible for discharge pursuant to 1328(f), the plan cannot strip off or void a wholly unsecured second mortgage lien. In *Jarvis*, the debtor's Chapter 13 plan provided for the strip off of the creditor's lien. Thus, the lien avoidance issue was dealt with in the context of confirmation of the debtor's plan. The *Jarvis* Court relied heavily on the earlier decision of *In re Lilly*, 378 B.R. 232 (Bankr. C.D. Ill. 2007), in which the Bankruptcy Court "[f]ound that, although a debtor could obtain confirmation of a no-discharge Chapter 13 plan which modified a creditor's interest rate from the contact rate for purposes of calculating plan payments, such modification was not permanent and, in the absence of a discharge, the collateral securing the debt would still be encumbered by the balance due on the debt calculated at the contract rate." *In re Jarvis*, 390 B.R. at 605 (*citing In re Lilly*, 378 B.R. at 237). The *Jarvis* Court distinguished *Lilly* because in *Lilly*, the Court focused its analysis on 1325(a)(5)(B) and determined that the creditor had an "allowed secured claim." *In re Jarvis*, 390 B.R. at 605. In contrast, the *Jarvis* Court determined that the creditor's claim was not an "allowed secured claim" because the second mortgage was not secured by any value. *Id.* The *Jarvis* Court found that the debtor could only accomplish the temporary treatment of the mortgage as unsecured during the life of the plan. *In re Jarvis*, 390 B.R. at 605-06. The Court concluded:

> A no discharge Chapter 13 case may not, however, result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted. This Court can find no evidence that, by adding new § 1328(f), Congress intended to expand debtors' remedies in the way that the Debtor here proposes.

11

*In re Jarvis*, 390 B.R. at 605-06.  This Court declines to follow *Jarvis*.  Although the Jarvis Court recognized that a wholly unsecured claim is not an allowed secured claim under Section 1325, it ignored the consequence of that determination.  Once it is determined that the claim is not an allowed secured claim pursuant to Section 506(a), by its terms, Section 1325(a)(5)(B) is inapplicable.

In *In re Mendoza,* 2010 WL 736834, the United States Bankruptcy Court for the District of Colorado relied on *Jarvis* in finding that a Chapter 13 debtor who was ineligible for a discharge under 1328(f) could not strip off a wholly unsecured mortgage.  In so holding, the *Mendoza* Court disregarded the Tenth Circuit Bankruptcy Appellate Panel case of *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166 (B.A.P. 10th Cir. 2005), which held that Section 1322(b)(2) does not prohibit the modification of a wholly unsecured claim.  In an unreported decision, the *Mendoza* Court found that the creditor's second lien "appears to be void under § 506(d), because it secures a claim that, at the time of petition, is not an allowed secured claim."  *In re Mendoza*, 2010 WL 736834 at *2.  The *Mendoza* Court also noted that Section 1325(a)(5) was "inapplicable to this case because it relates solely to allowed secured claims under a Chapter 13 plan."  *In re Mendoza*, 2010 WL 736834 at *2 n. 1.  However, the Court favorably cited *Jarvis* and *Blosser* and found that "[a]llowing a debtor to file Chapter 7, discharge all dischargeable debts, and then immediately file Chapter 13 to strip off a second mortgage lien would not be much different than simply avoiding the mortgage lien in the Chapter 7 itself."  *Id.* at *3 (*quoting In re Blosser*, 2009 WL 1064455 at *1) (internal quotations omitted).  The *Mendoza* Court held that allowing the debtors to avoid a wholly unsecured second mortgage lien in a Chapter 20 case

would be akin to granting the debtors a discharge of that debt, rendering the bar set forth in Section 1328(f) inoperable. *In re Mendoza*, 2010 WL 736834 at *4.

Similarly, in this case, TD Bank asserts that the holdings in *Dewsnup* and *Ryan* prevent the Debtors from filing the instant Chapter 13 case for the sole purpose of stripping off its lien. TD Bank argues that because a debtor cannot lien strip in a Chapter 7 case, a debtor cannot obtain the benefit of a Chapter 7 discharge and then file a Chapter 13 case to accomplish what they were unable to do in Chapter 7. This Court disagrees. The debt owed to TD Bank was discharged in the Debtors' Chapter 7 case. As such, the Debtors' personal liability to TD Bank was eliminated and TD Bank would have no right to collect in state court from the Debtors. Further, if the Debtors' sole purpose in filing the instant case was to strip off TD Bank's lien, then the Debtors would have to overcome any allegations of bad faith at the plan confirmation stage pursuant to Section 1322(b). *In re Tran*, 431 B.R. at 237-38.

Another case adopting the majority view is *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010). In *Fenn*, the United States Bankruptcy Court for the Northern District of Illinois determined that "[w]hether a lien can be avoided under § 506(d) should turn on whether its underlying claim has been disallowed." *In re Fenn*, 428 B.R. at 498. The distinction between valuation under Section 506(a) and disallowance of a claim is critical to *Fenn's* analysis. The *Fenn* Court agreed with the debtors that the junior lien could be valued at zero for confirmation purposes, but the lien could not be avoided until completion of the plan and entry of a Chapter 13 discharge order. *Id.* at 500. The debtors in *Fenn* argued that the junior mortgage lien had been disallowed due to its treatment under Section 506(a). *Id.* at 499. The Court disagreed, finding that Section 506(a) does not by its terms or operation disallow claims and since the junior

13

mortgage claim was not objected to and disallowed by court order, the claim was not disallowed pursuant to Section 506(a). *Id.* at 499. The Court found that "[a]llowing the avoidance of mortgage liens solely under Section 506(d) in the Chapter 13 context could make Section 1325(a)(5) superfluous." *Id.* at 501. The Court further found that Section 1325(a)(5) controls the retention of a lien in the context of Chapter 13 plans and "that Sections 1322(b)(2), 1325(a)(5) and 506(d) can be reconciled to mean that Section 506(d) allows lien avoidance where the claim secured by the lien has been disallowed." *Id.* at 501. Therefore, if a debtor is ineligible for a discharge pursuant to Section 1328(f), the *Fenn* Court held that the plan cannot be confirmed if it fails to retain the wholly unsecured lien until payment of the underlying debt as required by Section 1325(a)(5)(B)(i)(I).

This Court does not find the reasoning in *Fenn* persuasive. It is unclear from *Fenn's* analysis how the unsecured lienholder can establish an "allowed secured claim" to trigger the application of Section 1325(a)(5) where there is no value to support its lien. Retaining an *in rem* claim following a Chapter 7 discharge does not produce an allowed secured claim for purposes of Section 1325(a)(5) where there is no value to support the lien. It is also important to note that the Seventh Circuit has not ruled on whether Section 1322(b)(2) prohibits the avoidance of wholly unsecured liens. *In re Fenn*, 428 B.R. at 502. The conclusion in *Fenn* that lien avoidance under Section 506(d) turns on whether the underlying claim has been disallowed is also inconsistent with the holding of *Johnson v. Asset Management* and those cases following *Johnson* as previously discussed. *See supra* note 8. The *Fenn* Court addressed this issue noting that the decisions that followed *Johnson* were issued before the specific lien retention provisions of §§ 1325(a)(5)(B)(i)(aa) and (bb) were added to the Code by the BAPCPA. However, the

analysis in *Johnson* permitting lien avoidance under Section 506(d) was recently upheld by the Fourth Circuit Court of Appeals in two post-BAPCPA decisions.  *See, e.g., Suntrust Bank v. Millard (In re Millard)*, 414 B.R. 73 (D. Md. 2009), *aff'd*, 2010 WL 5158561 (4th Cir. Dec. 15, 2010); *First Mariner Bank v. Johnson*, 411 B.R. 221 (D. Md. 2009), *aff'd*, 2011 WL 52358 (4th Cir. Jan. 06, 2011).

Although this Court rejects TD Bank and the Trustee's position that lien avoidance in a Chapter 20 case is contingent upon a debtor's eligibility to receive a discharge, TD Bank is still afforded some protection by another provision of the Bankruptcy Code.[11]  Namely, Section 349(b)(1)(C), which provides that if the Debtors' case is dismissed (or the plan is not completed), TD Bank's lien will "spring back."  Specifically, Section 349(b)(1)(C) provides that dismissal of a case other than under Section 742 reinstates any lien voided under Section 506(d).  The delay in the legal effect of a valuation under Section 506(a), *i.e.* lien avoidance, until plan completion and the closing of the case merely incorporates the consequences of Section

---

[11]  In *In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010), the Bankruptcy Court analyzed section 1325(a)(5)(B)(i)(II), a step that this Court finds to be inapplicable to TD Bank's claim, and found:

> Permitting a chapter 13 debtor in a no-discharge case to strip off of a junior lien would not deprive the lienholder of its right of redemption during the course of the chapter 13 proceeding, if for example, the holder of a senior lien were to obtain relief from § 362(a)'s automatic stay. This is so because, as stated above, the court can condition any permanent modification or stripping on the debtor's performance and completion of the debtor's chapter 13 plan. And if such a chapter 13 case is dismissed or converted to chapter 7 prior to full plan performance, the lien would remain intact, under § 349(b)(1)(C) in the case of a dismissal, or under *Dewsnup* in the case of a conversion to chapter 7.

*Id.* at 236-37 (footnote omitted).  This analysis, however, is not dependent on section 1325(a)(5)(B)(i)(II) as the protections afforded under section 349(b)(1)(C) automatically arise upon dismissal.  The *Tran* court further found, as this Court has, that nothing in section 1325 conditions confirmation of a debtor's plan on the eligibility of the debtor for a discharge.  *Id.* at 235 ("Moreover, nothing in § 506, §1322, or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a discharge.").

349(b)(1)(C) and does not alter the fact that the lien is void under Section 506(d) for purposes of confirmation.

For these reasons, the Court finds that TD Bank's claim is not an allowed secured claim. Consequently, Section 1325(a)(5) does not apply to its claim and the Debtors' eligibility for discharge is not required to confirm their plan. TD Bank is protected in the event the Debtors' plan is not confirmed or if their case is dismissed prior to plan completion because the lien will revert back to its original status under Section 349(b)(1)(C). The same is true upon conversion to Chapter 7 because the lien avoidance does not occur until plan completion and *Dewsnup* and *Ryan* prevent lien stripping in Chapter 7.

**C. Was the Amended Plan proposed in good faith and not by any means forbidden by law and was the Debtors' petition filed in good faith, as required by 11 U.S.C. § 1325(a)(3) and (7), respectively?**

It does not automatically follow from the foregoing analysis that the Amended Plan should be confirmed. Section 1325(a)(3) provides: "…the court shall confirm a plan if– the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Courts consider "the totality of circumstances on a case by case basis" when determining whether a Chapter 13 plan meets the good faith requirement of Section 1325(a)(3). *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982). The *Deans* Court set forth a suggested and non-inclusive list of factors to be considered when examining the totality of circumstances, including:

(1) The percentage of proposed repayment.
(2) The debtor's financial situation.
(3) The period of time payment will be made.
(4) The debtor's employment history and prospects.
(5) The nature and amount of unsecured claims.
(6) The debtor's past bankruptcy filings.
(7) The debtor's honesty in representing facts.
(8) Any unusual or exceptional problems facing the debtor.

16

*Deans,* 692 F.2d at 972.  "These factors were supplemented in *Neufeld v. Freeman*, 794 F.2d 149

(4th Cir.1986), to add an inquiry into whether a major portion of the claims sought to be

discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes

only minimal repayment of those claims; and whether, despite even the most egregious pre-filing

conduct, the plan nevertheless represents a good faith effort by the debtor to satisfy creditors'

claims."  *In re Cushman*, 217 B.R. 470, 476 n.3 (Bankr. E.D. Va. 1998)(*citing Neufeld v.

Freeman*, 794 F.2d at 152-53).  Courts should consider additional factors in a Chapter 20 case;

namely:

> (1)  The proximity in time of the Chapter 13 filing to the Chapter 7 filing.
> (2)  Whether the debtor has incurred some change in circumstances between the
>       filings that suggests a second filing was appropriate and that the debtor will be
>       able to comply with the terms of the Chapter 13 plan.
> (3)  Whether the two filings accomplish a result that is not permitted in either
>       Chapter standing alone.
> (4)  Whether the two filings treat creditors in a fundamentally fair and equitable
>       manner or whether they are rather an attempt to manipulate the bankruptcy
>       system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*Cushman*, 217 B.R. at 477.

This Court has considered the totality of circumstances in its good faith analysis.  With

respect to the factors enunciated in *Deans*, the Court finds that the balance of these factors favors

a finding of good faith.  Mrs. Bracey-Davis testified on the issue of good faith at the January 26,

2010 hearing.  Her testimony was uncontroverted and the Court found her to be a credible

witness.  Mrs. Bracey-Davis testified that their Chapter 7 case was filed to (i) discharge

unsecured debt, (ii) strip down or cram down liens from their primary residence and rental

property, and (iii) obtain a loan modification to address the mortgage arrears that had accrued

prior to filing.[12]  She further testified that after learning that lien stripping is not available in a Chapter 7 case, the Debtors considered converting their case to Chapter 13; however, they had insufficient income to fund a Chapter 13 plan at that time.[13]  Accordingly, the Debtors proceeded with their Chapter 7 case with the hope that their pending loan modifications would be approved. Lastly, Mrs. Bracey-Davis testified that she was unemployed at the time the Chapter 7 case was filed; however, she and her husband obtained gainful employment in the fifteen months between bankruptcy filings, thereby dramatically improving their financial situation.[14]

With respect to the Amended Plan, the Debtors propose to pay the Trustee $1,110.00 per month for months 1-5, and $1,550.00 per month for months 6-60.  Their total plan funding is $90,800.00 to be paid over 60 months.  Debtors' bankruptcy schedules reflect that all of the Debtors' disposable income is being paid into their plan.  Additionally, the proposed five-year plan term is the maximum period proscribed by the Bankruptcy Code.  Both of these factors support a finding of good faith.  As for distributions under the Amended Plan, a significant portion of the Debtors' plan payments will be applied to their prepetition mortgage arrears and approximately $10,000.00 will be distributed to those creditors who filed unsecured claims.  This is not a case where the Debtors are attempting to strip off liens and not pay anything to unsecured creditors.  The Debtors are applying all of their disposable income to the Amended Plan and paying a portion of their unsecured debt.  Moreover, Debtors' Schedule C reflects that the Debtors have no non-exempt property that would be available for distribution to creditors.

---

[12]  Mrs. Bracey-Davis testified that their counsel in the Chapter 7 case assured them that these goals could be accomplished in a Chapter 7 case.

[13]  The Debtors' Schedule J filed in their Chapter 7 case listed monthly income of $5,993.33 and expenses of $10,486.00, leaving a monthly deficit of $4,492.67.

[14]  Debtors' current Amended Schedules I and J [Docket No. 65] list net monthly income of $1,171.87.

In considering the Debtors' past bankruptcy filings, the Debtors are not "serial filers" in the abusive sense of the term. This is only the Debtors' second case, the first of which was filed 15 months earlier and resulted in a Chapter 7 discharge. The Court also finds the Debtors' situation to be exceptional. When they filed for Chapter 7, they were in need of the protections afforded by the Bankruptcy Code. Mrs. Bracey-Davis testified that after the Debtors obtained their discharge, their mortgage modification was denied and additional mortgage arrears accrued. The Debtors also incurred new consumer debt to cover their living expenses. The Debtors filed their Chapter 13 case to deal with their mortgage arrears and other new debt, and to take advantage of the Chapter 13 lien stripping provisions. Although lien stripping after a Chapter 7 discharge in and of itself may be an indication of bad faith, when considered with other factors, it may be a legitimate reason to seek bankruptcy protection. *See In re Bateman*, 515 F.3d at 283 ("The availability of a discharge is only one factor relevant in considering whether a plan was proposed in bad faith, and that factor standing alone is insufficient to support a finding of bad faith."). Moreover, because the Debtors are ineligible for discharge, the additional inquiry required by *Neufeld* is inapplicable. The Court notes, however, that there was no pre-petition fraud or other wrongful conduct by the Debtors and their plan represents a good faith effort to satisfy creditors' claims.

In applying the four factors specific to Chapter 20 cases, the Court finds that this case was filed in good faith. As discussed above, the fifteen-month period that elapsed between the Debtors' Chapter 7 and Chapter 13 filings does not indicate a lack of good faith. During that time, the Debtors found new employment and also incurred new consumer debt and mortgage arrears. These changed circumstances justify a second filing and the Debtors' increased income indicates that the Debtors will be able to comply with the terms of the Amended Plan. Lastly, as

previously stated, although the Debtors are seeking to strip off TD Bank's lien in their current case, which they could not do in their prior case, that element, standing alone, is not enough to find a lack of good faith under the circumstances of this case.

The fourth *Cushman* element is similar to the requirement of Section 1325(a)(7) that a debtor's petition be filed in good faith (as opposed to the requirement of Section 1325(a)(3) that a debtor's plan be proposed in good faith). Here, as already detailed, the Debtors have legitimate claims to be paid through their Chapter 13 plan, including significant mortgage arrears and student loan debt. The Debtors' inability to fund a 100% plan weighs against them but not enough to find bad faith under the facts of this case. *See, e.g., In re Hill*, 440 B.R. 176, 185 (Bankr. S.D. Cal. 2010) (the Bankruptcy Court found no evidence of bad faith where the debtors had no equity in their non-exempt assets and were devoting a sum greater than their disposable income to their plan to provide for a minimal dividend to their unsecured creditors). There is no evidence that the Debtors are attempting to manipulate the bankruptcy system or abuse the purpose and spirit of the Code. This is not a case where the Debtors were capable of funding a plan, but chose to take advantage of the benefits of Chapter 7, and shortly thereafter filed Chapter 13 to attempt to avoid a lien. Rather, the Debtors had insufficient income to fund a plan when they received their Chapter 7 discharge and are now proposing a plan payment that devotes all of their disposable income. Further, in their Chapter 7 case, the Debtors had no non-exempt property available for liquidation to creditors. Thus, TD Bank received nothing. In this case, TD Bank does not dispute that its lien is unsecured based on the existing liens with higher priority. Accordingly, if TD Bank pursued foreclosure, it would still receive nothing. There is no inequity for TD Bank or the claims of Debtors' other creditors.

In sum, after considering the totality of circumstances, the Court finds that the Amended Plan was proposed in good faith and the Debtors' petition was filed in good faith, as required by Sections 1325(a)(3) and (a)(7).

**V.    Conclusion**

For the above-stated reasons, the Motion is granted and the Amended Plan is confirmed. Separate orders shall issue.


cc:    Debtors
       Debtors' Counsel
       Respondent
       Respondent's Counsel - Mark A. Cronin, Esq.
       Chapter 13 Trustee

**End of Memorandum**